### EDISON ELECTRIC LIGHT CO. v. ELECTRIC ENGINEERING & SUPPLY CO.

(Circuit Court, N. D. New York.   March 21, 1894.)

No. 5,949.

**1. PATENTS—LIMITATION BY FOREIGN PATENT.**
When, for the purpose of limiting the duration of an American patent, defendant introduces a foreign patent for a shorter term to the same inventor, he is not bound to show further that the foreign patent has not been extended, especially when there is no proof that the foreign law authorizes extensions. Bate Refrigerating Co. v. Hammond Co., 9 Sup. Ct. 225, 129 U. S. 151, explained.

**2. SAME—INVENTION—ELECTRIC LAMP HOLDERS.**
The Edison patent No. 265,311, for an electric lamp and holder for the same, shows patentable invention as to claims 2 and 3, which relate especially to the socket for holding the lamp.

**3. SAME.**
The Johnson patent, No. 251,596, for an improvement in sockets or holders for electric lamps, is void for want of invention as to claim 5, which is for an exterior metal covering protecting the interior portions of the socket.

**4. SAME.**
The Bergmann patent, No. 257,277, for an improvement in electric lamp sockets, shows invention as to claim 2, which covers a form of construction in which the contacts are compressed, instead of drawn apart, while screwing the lamp into the socket.

Bill by the Edison Electric Light Company against the Electric Engineering & Supply Company for infringement of patents. On final hearing.

C. E. Mitchell and Richard N. Dyer, for complainant.
Alfred Wilkinson, for defendant.

COXE, District Judge. This suit is based upon five patents owned by the complainant. All of them relate to improvements in sockets for incandescent electric lamps. They are No. 251,596, granted December 27, 1881, to Edward H. Johnson, No. 257,277, granted May 2, 1882, to Sigmund Bergmann, No. 265,311, granted October 3, 1882, to Thomas A. Edison, No. 293,552, granted February 12, 1884, to Sigmund Bergmann, and No. 298,658, granted May 13, 1884, to Sigmund Bergmann. The last of these patents, No. 298,658, was, at the argument, withdrawn from the consideration of the court. Regarding No. 293,552 it is admitted that at one time, three years or more ago, the defendant made sockets which infringed. As I understand the situation, therefore, there is no objection to a decree for an injunction and an account, so far as this patent is concerned. It remains to consider the other three.

## No. 265,311.

Although the patent to Thomas A. Edison was issued after the other two, it was, in fact, applied for February 5, 1880, before either of the others. It is regarded by all as the principal patent in controversy and will, therefore, be considered first. The patent is for a new and useful electric lamp and holder for the same. In the specification the inventor says:

"In order to adopt a system of electric lighting for ordinary and domestic uses, it seems essential that a lamp should be devised complete in itself, so that it may be supplied as a separate article ready for attachment to a suitable support, and with conductors so arranged that when the lamp is placed in position the circuit connections are completed without further adjustment, and the holder or socket for receiving the lamp should be arranged to subserve this purpose, this that there may be no difficulty encountered, no skilled care or attention needed in placing the lamps in position or in replacing one which from breakage or any cause whatever should become disabled. The object of this invention is to attain this; and to that end it consists in an electric lamp as a separate article adapted to be readily placed upon or within or removed from a suitable holder, and in a socket or holder as a separate article adapted to receive and support upon or within it an electric lamp, and in the combination of these two separate articles and proper contacts for completing the electric circuit, and in other features more particularly hereinafter described and claimed. * * * A is the socket or holder for receiving the lamp. It is made of suitable insulating material, shaped and ornamented as may be desired, receiving and supporting the neck of the electric lamp and fashioned at one end so as to be fastened into a gas fixture or other suitable support. As shown in the annexed drawings, it has a cylinder hollowed out from the top with a screw-threaded aperture in the base, by which it is attached to the bracket or chandelier arm, I."

The inventor then describes in detail the construction of the socket. The claims involved are the second and third. They are as follows:

"(2) A socket for an electric lamp, adapted to be placed upon a gas pipe or other suitable support, and provided with contact plates forming the terminals of an electric circuit, and arranged substantially as set forth.

"(3) A socket for an electric lamp, adapted to be placed upon a gas pipe or other suitable support, and provided with contact plates forming the terminals of an electric circuit, and also provided with a circuit controller inserted in one branch of the circuit for controlling the circuit substantially as set forth."

It will be observed that the second claim is the same as the first with the exception that the second has an additional element, viz., the circuit controller. The defenses relied on are, first, that the patent expired with a prior Russian patent in December, 1891, and, second, that the patent is void for lack of invention. Infringement is not disputed.

### The Russian Patent.

The answer avers that the Edison patent has expired under the provisions of section 4887 of the Revised Statutes. The preamble to the specification says that the invention was patented "in Russia December 14, 1881." A copy of the Russian patent was offered in evidence by the defendant and the complainant admits it to

be a correct copy of the Edison patent of December 14, 1881. This patent recites that a petition was presented "for granting to the foreigner, Thomas Alva Edison, of Menlo Park, in the state of New Jersey, United States of America, a ten years' patent for improvements in the arrangement and manufacture of electric lamps." It concludes with the statement that the government "gives to the foreigner, Thomas Alva Edison, the present patent of a ten years' from this date, exclusive right to use, sell," etc., the invention. The defendant also introduced a certificate from the Russian department of trade and manufacture that the patent expired or became "exhausted" in December, 1891. This certificate is criticised by the complainant as not being sufficiently authenticated. I am inclined to think that the absence of a seal and the signature of a superior officer of the Russian government renders the certificate inadmissible. Church v. Hubbart, 2 Cranch, 187.

Does the absence of the certificate materially change the situation? It is conceded that a prior patent was granted in Russia, December 14, 1881. As the court recollects the discussion at the final hearing it was admitted that the Russian patent was for the same invention as the patent in suit. It certainly seems to be for the same invention and no contention to the contrary is found in the complainant's briefs. It appears on the face of the Russian patent that Mr. Edison, through his agents, asked for and received a 10 years' patent. Unquestionably then the proof establishes the existence of a prior Russian patent, for the same invention, granted for a term of 10 years from December 14, 1881. But the complainant contends that this is not enough; that the defendant must go further and prove that the patent has not been extended. The case of Bate Refrigerating Co. v. Hammond Co., 129 U. S. 151, 9 Sup. Ct. 225, is cited as authority for this proposition. The decision in the Refrigerating Case did not turn upon a question of onus probandi; it was decided upon stipulated facts. It appeared affirmatively that pursuant to the laws of Canada, a Canadian patent originally for 5 years had been extended 10 years. The court held that under section 4887 the patent did not expire till the end of the 15-years' term. In other words, the court decided that it would not hold a patent to be dead when the affirmative proof showed it to be alive and operative. Surely this is not an authority for the proposition, that a presumption exists that a patent, limited to 10 years on its face, has been extended beyond that period. What is there upon which to base such a presumption? If an extension were, in fact, proved the law for it might be presumed. If a law permitting extensions were proved the fact might possibly, in some instances, be presumed. But how can the court draw an inference where there is neither fact nor law? The case of Pohl v. Brewing Co., 134 U. S. 381, 10 Sup. Ct. 577, appears to sustain the proposition that the foreign patent itself is proof of the duration of its term. At page 382, 134 U. S., and page 577, 10 Sup. Ct., the court says:

"It appears, by translations into English of the German and French patents, annexed to the bill, that the German patent began to run September 6, 1877, and its longest duration was until December 12, 1891."

Again on page 383, 134 U. S., and page 577, 10 Sup. Ct.:

"The German patent on its face appears to have been granted for a term extending from September 6, 1877, to December 12, 1891. * * * If the United States patent does not expire until the end of the term expressed on the face of that one of the two patents, German and French, which has the shortest term so expressed on its face, it does not expire until the end of the term so expressed on the face of the German patent, namely, December 12, 1891."

Where a foreign patent clearly and unmistakably shows on its face a definite term of years, it would seem, in the absence of proof to the contrary, that the term so shown must be accepted by the court as limiting the life of the patent.

In the present case there is an entire absence of proof on which to base an inference that the 10-years' term was extended. It was either a patent for 10 years or it was no patent at all. If the patent was for another or an extended term it was for the complainant to show it. The defendant's proof of a 10-years' patent is properly before the court. Until the contrary appears it must be presumed that the Russian patent was granted pursuant to Russian law for 10 years. The court cannot ignore or reject this proof upon a mere intimation of counsel that it may be erroneous. I conclude, therefore, that the Edison patent expired in December, 1891. The court, however, has jurisdiction, as the suit was begun some two months before the patent expired.

It is contended by the defendant that in construing claims 2 and 3 of the Edison patent the court should confine itself strictly and closely to the socket described therein, and by the complainant that the court should import into the socket all the virtues and ingenuity of Mr. Edison's incomparable system of electric lighting. Neither view is correct. The claims should not be defeated because other lamps have been supported in sockets, or upheld, because Mr. Edison has lighted up the world and illuminated electrical science with his Aladdin lamp. It is not necessary to consider his other patents. The one in suit furnishes all the data necessary. It is intended to cover an electric lamp and the socket for the same. The socket and the lamp form one complete structure; neither is of any value without the other. In construing the claims the completed lamp should be considered. It would be a most narrow and illiberal construction to leave out of view the lamp and the particular kind of lamp which the inventor described as inseparable from the socket. It is plain from the portions of the specification quoted above that the inventor's main idea was to reduce the lamp proper to the minimum of cheapness and simplicity and place all the durable and expensive mechanism in the socket so that the socket would outlast a great number of lamps which necessarily become broken or worn out and are cast aside. In short, the socket of the claims is the socket of the specification and drawings. It is a socket, small, compact and symmetrical in form. Although mere matters of shape are, probably, im-

material it is a noticeable fact that all subsequent sockets have in general appearance adhered very closely to the socket of the patent. It is made of insulating material and carries the two electrically segregated contact plates, the circuit controller and the leading in wires, so arranged that the most inexperienced person may light the lamp by merely inserting its neck in the socket. Finally, it must be so constructed that it can be fastened to a gas fixture or other suitable support, the lamp taking the place of the gas jet. The prior art does not disclose a socket which anticipates such a construction. Many of its separate features are found there, but not the completed structure organized as described. I cannot doubt that the production of such a structure involved invention, of a very inferior order to some of the other inventions of Mr. Edison, of course, but still sufficient to support a patent.

To discuss the prior art in detail would unduly protract this decision. The best reference offered by the defendant is admitted on all sides to be the English patent granted to Powell in 1874. It relates to arc and not incandescent lamps, the socket has but one contact plate and it is not insulated from the support. Mechanically it would be impossible to substitute this socket for the Edison socket, but if the mechanical changes were made it would be electrically impracticable for the reason that connecting it with a gas fixture or other conducting support would instantly ground the circuit. The patent to Jablochkoff shows adjustable metal jaws, but it can hardly be said to describe a socket at all. Manifestly it shows nothing that could take the place of the Edison socket. The other alleged anticipating structures are still further removed from the patent. No one of them anticipates and it is thought that all of them together would not have suggested the Edison socket to the skilled mechanic in the winter of 1879 and 1880, which is the time when the test should be applied. If the mechanic had all these before him, plus the Edison lamp fully organized and ready for insertion, he might be able to devise a suitable socket to hold the lamp, but this was not the problem with which Edison had to deal. The socket and the lamp form one structure and came into being at the same time as the result of a high order of inventive genius. The argument of the learned counsel for the defendant shows marked ingenuity and research, but for the reasons outlined above it is thought that the claims must be sustained.

No. 251,596.

The patent to Edward H. Johnson is for an improvement in sockets or holders for electric lamps. The inventor says:

"The object of my invention is to construct a socket or holder for incandescent electric lamps in which the circuit connections shall be completed by the placing of the lamp in the socket, subject, however, to such a circuit controller as shall instantaneously and effectually make or break the circuit and light or extinguish the lamp. * * * The socket is made in two parts—an upper portion, made of wood or other insulating material hollowed out to receive the neck of the lamp, and containing on its interior surface two metal bands corresponding to those of the lamp neck, and so connected with the conductors that when the lamp is screwed into the socket electrical connection is immediately completed to the lamp; and a lower part, consisting

of a piece of wood set into a metal cap having at the bottom a screw-threaded aperture, by which the socket is attached to a bracket or other fixture, and through which pass the conductors, which terminate in metal plates set into the wood of this part of the socket. * * * A metal covering may surround the upper part of the socket in order that the whole may present a uniform and ornamental appearance."

The fifth claim only is involved. It is as follows:

"(5) In a socket for electric lamps the combination, with interior insulating portions provided with circuit connections, of exterior metal portions, forming a covering therefor, substantially as set forth."

The defense is lack of patentability—aggregation. It will be observed that the patentee makes the use of the metal covering optional, for there can be no covering with the upper part omitted. He says, "A metal covering may surround the upper part of the socket." The only virtue he attributes to this covering is that it ornaments the socket, a feature which is conceded to be immaterial. In the last brief submitted, the learned counsel for the complainant says, quoting from the Edison specification, " 'It is shaped and ornamented as may be desired.' * * * Mr. Edison's conception from the outset was that mere shape and ornamentation were nothing." If there is "nothing" in the upper part of this metal box it is not easy to see how it involved invention to place it upon a similar lower part and thus form a covering. The experts seem to agree that the claim in question is for an exterior metal covering protecting the interior portions of the socket. In other words, that the patentee placed Edison's socket in a metal shell and the claim covers that shell. If all the features · described in the specification and covered by the other claims could be imported into the fifth claim it might be sustained, but the language of the claim itself in connection with the specification and the other claims seems to preclude such a construction. If the claim relates, as I think it does, to the parts of the specification in which the patentee says, "A metal covering may surround the upper part of the socket, in order that the whole may present a uniform and ornamental appearance," and, "The parts E, B, meeting and producing a continuous metal exterior for the socket," I think it must be held invalid for lack of patentability. One who covered the interior insulating portions of an electric light socket with such a case would infringe the claim without reference to the manner in which the terminals of the wires were connected to the binding posts. To provide such a case in view of all the prior knowledge on the subject did not involve invention. The socket looked better, but the case added no new function; the old parts operated in the old way. Mr. Johnson has very likely made an ingenious and patentable improvement, but the difficulty is that the claim in controversy is not aptly worded to cover such improvement.

## No. 257,277.

The patent to Sigmund Bergmann is also for an improvement in electric sockets. He says in his specification:

"The object I have in view is to produce a socket for incandesing electric lamps which will have the electric terminals or contacts so constructed and

arranged that the terminals can be used on the base of the lamps, which, from their position, will subject the base to compression when it is screwed into the socket, instead of to tension, thus permitting the use of a molded base without danger of cracking between the terminals. The invention is applicable to sockets of all kinds used in systems of electric lighting, whether for lamps or for simple plugs, for connections or for 'safety-catch' plugs, such as are used in the 'cut-outs' or blocks for branching circuits. The invention consists mainly in providing a socket with terminals or contacts, one of which is a horizontal metal ring located on its side walls, which ring is screw-threaded or otherwise formed to engage an oppositely constructed ring on the base or plug, and the other of which is a plate, spring, or equivalent device, located in the bottom of the socket, the base or plug having a metal tip, which is forced down on this plate by the engagement of the rings; and, further, in peculiar details of construction, all as more fully hereinafter explained, and pointed out by the claims."

The second claim only is involved. It is as follows:

"(2) In an electric socket, the combination, with the body of insulating material, of a plate in the bottom of the socket, and a horizontal screw ring located between the bottom plate and the mouth of the socket, said plate and ring engaging opposite parts on an entering base or plug, and serving to compress the base or plug between the terminals carried by it, substantially as set forth."

The defense is that the patent is void for lack of patentability. Infringement is not seriously disputed. This claim is for minor details of construction and relates to differences in the arrangement and shape of the terminals, its object being to screw the lamp firmly in the socket without cracking or breaking the plaster of Paris or other insulating material by which the lamp terminals are fastened to the neck of the lamp. The scope of the invention is tersely explained by Mr. Bergmann himself, who was called as a witness for the defendant. He says in substance:

"I remember that before February, 1882, the plug and terminals of the lamp were made quite different, instead of compressing the contacts when screwing the lamp into the socket you pulled the terminals apart in the old style. As this was a serious matter for the safety plug as well as for the lamp—and the material which was applied generally at that time was plaster—broke the plug or the lamp at its terminals very often, and made the same useless, I went to work and just reversed what had been done before, viz., compressing the plaster or insulating material, and I remember being glad at having overcome this difficulty so easily, and I went up and saw Mr. Edison, and he at once sent word to the manager of the lamp factory, to stop making the old-style lamp bases and make them the way we have made the safety plug, viz., compressing the plaster when screwing the lamp in, instead of pulling it apart."

It is unnecessary to discuss the prior art. The Powell patent does not anticipate for the same reasons that it does not anticipate the Edison patent. The other references are no better and, in fact, not so good. None of them shows the combination in controversy. I am of the opinion, therefore, that the invention, though a narrow one, is sufficient to sustain the claim.

The questions arising under section 4900 of the Revised Statutes may become important in view of the expiration of the Edison patent. It is enough now to say that the defendant's counsel did not allude to these questions upon the argument and they are not discussed in his brief. Should it become necessary they can be pre-

sented hereafter. The attention of the counsel is called to the recent case of Dunlap v. Schofield, 14 Sup. Ct. 576.

It follows that the complainant is entitled to a decree for an accounting upon claims 2 and 3 of No. 265,311, and for an injunction and an accounting upon claim 2 of No. 257,277, and claims 4 and 6 of No. 293,552, but without costs.